Honors, the final case of the day, Pre-Basho 9-62-3 v. City of Waukegan Police On behalf of the appellant, this is Krizio Yosaki-Ressler, and on behalf of the appellee, C. Jeffrey Thuck. Good morning. Sorry, we're running late this morning, and is it Mrs. Ressler? You may step forward. Thank you. May it please the Court, Counsel. My name is Krizio Yosaki-Ressler, and also present is Bernard Yosaki, and we represent Officer David Deprez, the appellant. I would like to reserve five minutes for rebuttal. The issue on appeal is whether Officer Deprez's injury while conducting a mandatory inspection of his squad vehicle is considered an act of duty to receive a line of duty pension. Officer Deprez has been an officer since 1979. On February 11, 2007, while on duty conducting a mandatory inspection of the interior and exterior of his squad vehicle, he slipped on ice and injured his shoulder. Since that time, he has not been released by any doctor to return as a full-duty officer without restrictions. A split pension board found that Deprez suffered a non-duty disability, and his injury was not due to an act of duty. They found, number one, that Deprez injured his right shoulder on February 11, 2007 when he slipped and fell on ice while conducting a routine inspection of a city of Waukegan police squad car prior to his shift as a patrolman. But based on the pension board's response brief to this court, this is currently not in dispute. They have agreed that Officer Deprez was on duty at that time, which leads to the second part of their decision was that the act of inspecting a police squad car does not present a special risk not ordinarily assumed by a citizen in the ordinary walks of life. What's the standard? Interesting point. On our first brief, we did mention that it was a manifest weight standard because there was the distinction of whether he was on duty or not on duty at the time of the inspection of his squad vehicle. But since the board has agreed now in their brief that they were on duty, we find that it's a novel standard because as the board has mentioned at the hearing, they have no issue as to whether Deprez was injured at that time or not. It's whether he was performing an act of duty at that time. Correct. And that's what we would hold that as a novel standard. Now what special risks were involved in inspecting this squad car that would have been different than some other employees would have done? The special risks that Officer Deprez encounters when inspecting, he's not only inspecting the exterior of the squad car, he's inspecting the interior of the squad car, which the Waukegan Police Department finds that it's very important for them to inspect both because offenders that the previous officers may have had arrestees could have left drugs, blood, contraband, other weapons that may be harmful to Officer Deprez when taking the assigned squad car at that time or to other civilians who come in contact with that car. So in the sense that is the difference between an ordinary person in the walks of life inspecting their own car as to a police officer inspecting their assigned vehicle. It's based on then what they would find that's what makes it a special risk? Right. And the Waukegan Police Department finds that it's very important for the police officers to inspect the interior and exterior of the car. The importance of the issue is what makes it a special risk? Oh, correct. The special risk is what they would find in the car, be it the blood, drugs, contraband weapons, in addition to making sure that the computer and other vehicle is working properly. So we would ask that when you look at Officer Deprez, you're looking at the statute of the act of duty, which is 40 ILCS 5-5-113, which states that any act of police duty inherently involving special risk not ordinarily assumed by a citizen in the walks of life imposed on a policeman by the statutes of the state or by ordinances or police regulations of the city in which this article is in effect. And following the Supreme Court holding in Johnson v. Retirement Board of the Policeman's Annuity and Benefit Fund, that court hold that the importance is in what capacity the police officer is acting when the assigned duties are similar to those involved in many civilian occupations. They noted that driving an automobile, entering a building, walking, upstairs, and even crossing the street are activities that are shared by a police officer and plumber. The difference is what is the crux, the court held the crux is the capacity in which the police officer is acting. What do you mean the capacity in which the police officer is acting? Well, whether the police officer is acting in a clerical manner, as mentioned in Moorhan, or is he acting as a police officer with the police officer duties to protect and serve the people. Here, Officer Dupree's was conducting a mandatory inspection that consisted of special risk not ordinarily assumed by a citizen in the walks of life. Being a FedEx driver, a taxi driver, renting a car, as the pension board has noted, their inspections are not similar to a police officer's inspection of the squad vehicle. The board only notes that the ordinary citizen conducts an inspection of the exterior of the vehicle, where here, Officer Dupree's testified in addition to Deputy Chief Dan Greathouse testified that you are inspecting the interior and exterior of a police vehicle to make sure that everything is safe. Dupree's underwent special training that the Waukegan Police Department requires to make sure that he is conducting proper interior and exterior inspection. And the inspection, as noted, is mandatory and police officers will be disciplined if they do not conduct an adequate interior and exterior inspection, which Officer Dupree's did testify that he has been disciplined for not being able for not actually inspecting his squad car adequately. The police department provides a test for all officers to make sure that they're conducting a proper inspection of their interior and exterior squad car by placing place cards throughout the vehicle to make sure that they are actually conducting proper inspection of their vehicle. This has been mandatory for 20 years plus, as testified to. Officer Dupree's also found it very important to inspect the interior and exterior of the vehicle because he was a trainer for all the new police officers in conducting the interior and exterior of the vehicle. We know that postal workers, Federal Express drivers, taxi drivers, those categories of employees are required, presumably, to carry the shift. So how is the policeman's duty any different? Well, you have... If they do inspect, as noted, they inspect the exterior of the car. Also, the difference is... You're saying they don't inspect the interior? I am unaware of whether they inspect the interior or not. But if they do inspect the interior, they are not presented with offenders or other elements that police officers are faced with when they are putting an offender in the back of their vehicle so they have different things that they might be looking for, rather than police officers looking for specific things that might harm a person. You're saying a taxi driver wouldn't do that? Anybody and everybody can get into a taxi? Correct. I think the ratio of whether those people are criminals are not as high as a person putting in the back of the seat of a squad car. My memory of the record was that the inspection did require an inspection of the inside of the car. To see whether or not there were any guns between the seat cushions or any other object that anybody else that gets into the police car might be injured by or be able to use as a weapon if it's an arrestee. Correct. Is that your recollection of the record, that the inspection was the outside of the car and the inside of the car? Yes, that is my recollection. Is it fair to say that the capacity in which the officer was working involved a risk, namely the risk of finding a gun or a hypodermic needle in the car or something else that's not assumed by the general public? That's exactly our point, is that it's not presented with finding guns, bloods, hypodermic needle any kind of drugs that may harm them or others, whereas a police officer definitely has the potential. The general public is not doing that. Correct. It's not assumed as, for say, a clerical work where the cases have stated that clerical work police officers don't assume a special risk, but here there is a special risk because other civilians don't share in that risk of when they do, if they do conduct an inspection of the interior of their vehicle they will not or will not be looking for probably will not find drugs, blood, contraband or weapons to harm them. In addition Do you have the attorney for your argument? Any interest as well? Based on the, since we filed this brief before the Kousakis Supreme Court ruling came down the Supreme Court ruling in Kousakis stated that there is no prejudgment interest in Section 2 for police officers so we understand that the 2nd District is under that ruling so we will not be arguing prejudgment interest. The attorney's fees as you mentioned, there is, we did mention that that person went to 705 ILCS 225 slash 1. If the court should find that Dupree is injured in a line of duty, we would just ask that this court consider whether the pension is considered wages based on that statute. We understand that the court has not expanded this to the police pension cases, but since it has expanded to the Public Employees Disability Act for Insurance, we just ask for the court to look as to whether this is considered wages in regards to that statute. Would you like to, is there any other questions? Would you like me to continue back on the act of duty with special risk? In asking for attorney fees, apparently the letter indicates that pursuant to 705 ILCS 225 slash 1, he's requesting to his attorney 65% of wages are in effect of July 07, pursuant to a duty related to pension disability citing the statute to be paid. Did the plaintiff list any specific dollar amount for attorney fees as required by Section 1? Right. I understand that it is required, but at that time we were unsure as to whether, what the attorney's fees would be because of the 65% how that is calculated. Pension boards look at, when they award an amount, they look at whether he was under workman's compensation, and then they adjust the compensation based on whether he was on that, and then he gets the award after workman's compensation monies are out. In fairness, we did not mention that because we were unclear as to what the specific dollar amount would be in relation to the workman's compensation case that he was also under. There are many cases that involve the special risk of a police officer, many that have been listed in 2008, but the most important one that came down in the 2nd District is the 2004 case, which stated that simply riding a bicycle was an act of duty that involved special risk. The majority found that. What did Bowman find? Justice Bowman... Okay, all right. You'll have some time on the panel here, so thank you. Thank you. Good morning, Your Honor. My name is Jeffrey Thott, I represent the Board of Trustees of the Waukegan Police Pension Fund. I please the Court of Counsel. The first item that I disagree with is preliminary to the standard of review. I understand that in the past, in pension fund cases like this, when you are trying to determine whether or not an officer is injured in the line of duty, you have found that the standard of review is de novo. I put it to Your Honors that I believe that the standard of review should be one reserved for a mixed question, and whether or not the facts satisfy a statutory standard. In making that argument, I go back to my role since... What are the factual disputes? There aren't any, but that doesn't matter. So there's a mixed standard? Sure. Yeah, in fact, as this Court said in Heron, a mixed question exists where there's historical facts that are either admitted or established. Here they're admitted. Yeah, the guy got hurt and he busted up his shoulder when he was walking around and he slipped on ice. That's fine. In making all this determination, the Waukegan Police Pension Board, which is a couple of police officers that are appointed, actually elected by their brethren, there's a retired policeman, and there's, I believe, two, maybe three board members that are appointed by the mayor of the city of Waukegan. I equate these people to a jury. They're lay people. They're not out there interpreting statutes. They're hearing testimony. They're hearing testimony, and then they turn to me and they say, Jeff, what can we do? I'll read them the statute. What deference should we give to which facts under your standard and under your so-called standard you want us to use? Which deference towards the facts? I'm sorry. Under your standard, we have to give deference to the fact-finding of the... The facts are undisputed. What I think you give deference to under the clearly erroneous standard is you determine whether or not, with a definite and firm conviction, that these lay people made a mistake in applying these facts to this standard. So it's not necessarily a factual dispute, but again, under clearly erroneous or reviewing court, it must be left with a definite and firm conviction that a mistake has been committed by these lay people who are taking these facts. They're reading the statute. They're not interpreting the statute. They're reading the statute that says, okay, section 5-113 defines an act of duty as any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life. And then we read the case law. They ask, what does that mean? I say, well, at one point we have the Fedorsky case where an officer's riding around in the back of a squad from the jail back to the police department, gets hurt in a car crash. At another time, we have the Morgan case that you cited in Fedorsky where a guy was writing out a report and fell off a chair and injured his back. On the other hand, we have all that counsel referred to where an officer who was on patrol riding a bike becomes injured. Then we have Jones, the guy that's down in Bloomington driving and gets rear-ended while he's investigating speeders. That is, this is a pension board, which is a fact finder, applying those facts, which are undisputed, to the statute. That's a mixed question. I find it intellectually difficult to get my arms around why this should be de novo as opposed to a jury question, just like any 12 people applying the facts to the law and coming up with a decision. With regard to the line of duty distinction, as Justice Bowman wrote in Fedorsky, the crux is the capacity in which the police officer is acting rather than the precise mechanism of the injury. What's he doing? Your Honors, I think it's very common for anybody that drives an automobile to walk around as required by an employer to inspect it inside and out. And to argue that a taxi driver might not find something that is dangerous in the backseat of a cab or that an officer is much more likely to find either contraband being drugs or some sort of weapon in his backseat is any more likely than a taxi cab driver finding one in his backseat is stretching it. Well, but isn't the job of a police officer to arrest those who violate the law and put them in the squat car? Yeah. So I mean, those are the persons a police officer deals with, those who have violated the law. So isn't it more likely that he or she would find the items counsel referred to weapons? I mean, it's true, taxi drivers pick up the general public, but the ratio might be somewhat very different. That assumes that everybody that rides in the backseat of a police car is a dangerous criminal. That assumes that every member of the general public might not have something they're not supposed to have in their pocket that falls out when they leave the cab. I don't think we're talking about something falling out of somebody's pocket, but if a police officer doesn't do a thorough investigation and search of the rear of his squat car, and later on in that shift a little packet of cocaine turns up between seats, how can he testify in open court that it was on the person of whoever it was that he transferred to? Now, the downside of not being able to testify, that's very significant, as opposed to perhaps a taxi driver who missed something in the backseat of his vehicle. And doesn't that directly tie into what it is that a police officer does? It doesn't, it doesn't. Your Honor, in answer to your question, as this Court said in Fedorsky, at that time the officer was riding from the jail to the police station in Aurora. And this Court found nothing related to his duties as an evidence technician increased the risk that he was going to get hurt. Nothing inherent in his duty of inspecting that car increased the risk that he's going to slip on ice outside and injure his shoulder. Nothing in increased the risk of an officer walking across the street to put a parking ticket on the windshield where he slips on ice and hits his shoulder. That also was found not to be a line of duty. And Morgan, again, officers all the time, members of the general public all the time are writing out reports. Policemen have to write out reports that's required by their job, just like it is required for them to inspect the inside of a squat car. It's required. Nothing inherent in him writing out a report increased the risk of him falling off a chair and injuring his back. The other cases, the Sarkis case, that's different. That's an officer picking up a crossing gate, a railroad crossing gate, furthering his public safety duties. Same with the guy that was moving the concrete blocks in the Merlot case in Orland Park. I can't see this is not a case where he was on patrol yet. That's the distinction. That's Alm, where the officer was on patrol, and that's Jones, where the officer again was on patrol. Did he start his shift that day? Yes. Was he on duty? Yes. But just because he was on duty doesn't mean he's injured in the line of duty. That's a distinction that's been made in the case law. I think if you apply the clearly erroneous standard, even if you apply the de novo standard, there's nothing here that is a special risk as defined by the statute. People in the ordinary walks of life all the time are required to inspect the inside and the outside of their vehicles, be it an airplane on a tarmac at an airport, be it a taxi driver, be it a FedEx driver, be it a fireman, all of them. So you disagree with counsel when she says it's what they might find that distinguishes this case from other situations? Yes, I think people in their ordinary walks of life might find dangerous materials in automobiles that they have to use in the course of their employment. No different than a policeman. There's nothing about that that increased his risk of injury that made it a special risk. If the officer is injured in the course of searching the car, he puts his hand under the seat and is hit by two hypodermic syringes, does that make a difference? Yes. Where do you draw the line? The risk of him being injured in that matter was significantly increased by his duty to inspect the car. So it's only a significant risk if he finds something dangerous? It's not a significant risk if he's just looking for something dangerous? We're picking nits. I think it's special. That's what I'm trying to get at also. An officer can drive all day long on patrol and never be hurt. First of all, not significant, but special. It's a special risk that is endemic to a policeman's duty. That's a special risk. And again, I come back to what this court said in Fedorsky, and the risk, I flipped ahead to prejudging interest, bear with me. In Fedorsky, this court found that nothing related to the officer's duty as an evidence technician increased his risk of being injured in a car crash. My question to you is you're asking us to apply a retroactive standard. It would be a special risk if he's injured in the course of the search of the car. But then we make the decision that it was a special risk because he got hurt in the course of the search. I think you have to make a decision and this court has to find that there's something relating to his duties as a patrolman which increased his risk of slipping on the ice and injuring his shoulder. Do you agree that the clarity of the statute is quite lacking in clarity? I think the statute, no I don't. I think the statute states that any act of police duty inherently involving a special risk not ordinarily assumed by a patrolman is clear. I think that's clear. I don't think that's subject to judicial interpretation either by a pension board, a jury, or a trial court or this court. When you find everybody riding in cars, the police officer that's on duty patrolling, driving his car, found an inactive duty. A cat riding in a car, a police car, found not an active duty. If the cat is being transported to a court to testify, does that change it? If he's riding in a taxi cab being transported to the court, does it mean he can't recover from a taxi cab accident but he can recover if it's a police car? Everything is a variation on the theme. The theme, and I think you're referring to the 5th District case where the patrolman looking for speeders. I think that sentence is what carried the day for that particular gentleman down in Bloomington. In your case, your Fedorsky case in this district, we've got a guy that was basically hitching a ride from one venue to another. Was he on duty? Sure he was. But was his risk of getting injured increased up to the level of a special risk because he was being gotten a ride from a couple other detectives? No. So you're saying we should look at the act of the inspection, the walking around the vehicle, not looking in the vehicle to determine whether or not there's a special risk? Yeah, and determine whether or not his risk of injury was increased by his  looking inside the vehicle. I think you have to look at both, inside and out. But how does what he was looking for play into this? How do you view that? I don't think it does because I think anyone that inspects a vehicle in the course of their employment has to inspect it inside and out, and anyone that's inspecting a vehicle is subject to the same risks that a police officer is subject to. So you're saying because you don't think it's more likely that a police officer is going to find contraband or some objects that are inherently dangerous should determine whether or not there are special risks? A, I don't think it's more likely he's going to find contraband than a taxi driver would be finding contraband. And B, I don't think the fact that he might find contraband increases his risk of injury. Done with active duty. Just briefly on the attorney's fees argument, Officer DePriest is not employed by the Waukegan Police Pension Fund. He's not an employee of the defendant in this case. He's an employee of the City of Waukegan. They are different. The defendant in this case is the Board of Trustees of the Waukegan Police Pension Fund. It is not the City of Waukegan. And the Wage Act applies only to an employer-employee relationship. Thank you for your time, Your Honors. Thank you very much. Just quickly in my conclusion, noting what counsel has noted as Fedorsky, Morgan, and White, I just would like to touch base as to how this case is different and distinguishable than the Fedorsky case, which is a 2nd District case. Also noted that he was in an unmarked squad vehicle conducting nothing as an evidence tech. Officer Fedorsky was simply, as the case law stated, delivering a camera to another patrol officer. This, you have to look at, as we have argued in the beginning, you have to look at the crux of the capacity of what the officer is acting when the assigned duties are similar to that of those of ordinary citizens. Here, Fedorsky is simply different than this case based on Dupree's was acting on a mandatory inspection. The evidence tech was doing nothing as his role as an evidence tech when riding as a passenger. This goes also to White, which is different from Dupree's, Officer Dupree's. White has stated in the case that there was other civilian employees that also share the same duties of placing parking tickets on other vehicles that are illegally parked throughout the city. Also, they were just, Officer White was informed that he should be making more parking violation tickets. Here, Officer Dupree's, it's a mandatory inspection. There has been no other employee of the Waukegan Police Department or the city of Waukegan conducts the same mandatory inspection of a police vehicle before a police officer goes on patrol. So those are the differences that I would like to, I wanted to make that are distinguishable between the cases that have found a non-duty disability that didn't share a special risk of ordinary citizens and Officer Dupree's case where there was a special duty for him to inspect the interior and exterior of his vehicle. Finally, the other difference is that an ordinary citizen, if they do find or they choose to inspect, they have no duty to respond to anything that they find in their vehicle where a police officer has a duty to respond to anything that they may find in their squad car. In conclusion, the Waukegan Police Department places high importance on officers conducting an inspection of the interior and exterior of their squad vehicle. Officer Dupree's did have a special duty at that time to inspect his squad car that is not shared by the ordinary citizens, which is why we would ask, respectfully ask that you reverse the board's decision and award Dupree's a line of duty disability. I'm sorry. Well, simply looking at the statute, I believe that it is clear and what the case law has done is provided examples of what is an active duty and what is not an active duty. In following the clarity of the statute, we also find it helpful to look at the case law to see what is considered in the capacity of a police officer that is not shared by an ordinary citizen. Thank you very much.